IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVEN FRIDLEY<br>4651 W. 41st Street,<br>Cleveland, OH 44109<br>    Plaintiff,<br><br>  vs.<br>THE CITY OF CLEVELAND<br>601 Lakeside Avenue, Room 106<br>Cleveland, OH 44113<br>CALVIN WILLIAMS<br> (in his official and personal capacities)<br>c/o Department of Public Safety<br>601 Lakeside Avenue, Room 230<br>Cleveland, OH 44114<br>    -and-<br>JOHN DOES 1-3<br>(in their official and personal capacities)<br>    Defendants. | Case No.<br><br>Judge<br><br>Magistrate Judge |
| **First Amended Complaint with Jury Demand** | |

### Nature of the Action

1. Plaintiff Steven Fridley devoted his young life to peaceful political organizing, until his unlawful prosecution for constitutionally protected expressive activity at the 2016 Republican National Convention cost him his job, his girlfriend, and left him afraid to publicly protest for fear of another unconstitutional ordeal.

2. By this civil-rights action, brought under 42 U.S.C. § 1983 and Ohio law, Mr. Fridley seeks to hold the City of Cleveland and its police officers responsible for violating his constitutional right to peacefully protest the American government by joining Gregory Lee Johnson's constitutionally protected burning of an American flag, and peacefully chanting words of protest in a designated free-speech zone.

## PARTIES

3. Plaintiff Steven Fridley is a resident of Cleveland, Ohio. He devoted himself to peaceful political organizing from the date Michael Brelo was acquitted of the murder of Timothy Russell and Melissa Williams, when he called off work, joined a protest of the 137-bullet shooting organized by the Revolution Club, and devoted himself (with the support of donors, friends, family) to full-time political organizing until his arrest at the Republican National Convention in Cleveland.

4. Defendant City of Cleveland (the "City") is a municipal corporation under Article XVIII of the Ohio Constitution, and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. The City operates and supervises the Department of Public Safety ("DPS"), which includes the Division of Police (the "Division").

5. Defendant Calvin Williams is the City's Chief of Police. At all relevant times, he acted under color of state law and in his official capacity. He is sued in both his official and personal capacities.

6. Defendants John Doe 1, 2, and 3 are Cleveland police officers, who each acted at all relevant times under color of state law and in their official capacities, and are each sued in both their official and personal capacities.

## JURISDICTION AND VENUE

7. Under 28 U.S.C. §§ 1331, 1343, and 2201, Mr. Fridley asserts jurisdiction over federal claims under 42 U.S.C. §§ 1983 and 1988, which provide for attorneys' fees in civil-rights claims. This Court has supplemental jurisdiction over Mr. Fridley's state-law claims under 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over the defendants, who reside in and conduct municipal business in this District. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to Mr. Fridley's claims took place within this District.

## FACTUAL BACKGROUND

9.     When the 2016 Republican National Convention came to Cleveland, the City bragged about its capacity to constitutionally police the RNC, and established "free-speech zones" for protestors to exercise their First Amendment rights, including the site where Mr. Fridley was arrested. According to the City's "Safety Preparedness Plan" for the RNC, "Anyone wishing to exercise their First Amendment rights will be able to do so and the City of Cleveland will assist them to ensure a safe environment."

10.    As the plan required, Defendant Calvin Williams, the City's police chief, was responsible "for the direction, supervision, and management of all law enforcement officers" in designated free-speech areas. But training police to protect protesters' First Amendment rights remained an afterthought. "The Goal of the City of Cleveland," it declared, "is to provide a safe and secure environment for all participants, news media, individuals exercising their First Amendment Rights, service providers, and the general public," and a General Order required the City to "actively" assist protesters in free-speech zones, but the $50 million procurement did not seek funding for any specific training on protecting the protected speech its officers loathed and punished.

11.    Instead, City of Cleveland police officers arrested Mr. Fridley for joining Gregory Lee Johnson's constitutionally protected protest—the symbolic burning of an American flag—and prosecuted him (and a number of his fellow protesters in the Revolution Club) on sham charges, including obstructing official business, failure to comply with a lawful order, and aggravated disorderly conduct—a prosecution Defendant John Doe 3 set in motion by ticking boxes on a charging form at Defendant Williams' authorization and ratification.

12.     The Defendants knew the charges were a sham. Mr. Fridley exercised protected speech in a designated free speech zone, and committed no crime, as all of the officers present for his arrest, including Defendant Williams, who had supervised the City's surveillance of the Revolution Club and its planned protest, and pointed at Mr. Fridley, known to the City through its surveillance as the only Cleveland-based member of the protest group, knew or reasonably should have known when Mr. Fridley was arrested and booked.

13.     Mr. Fridley and the protest group had practiced forming a safety circle by linking arms around Mr. Johnson and his symbolic flag-burning until they were confident they could ensure a safe and peaceful protest even if, as proved the case, the City inverted its responsibility to assist the protest group with their peaceful speech. At the free-speech zone, Mr. Fridley linked arms with his fellow protesters to create an safe oasis for Mr. Johnson to attempt to perform his symbolic speech. But the City's police officers sprayed fire extinguishers at Mr. Johnson the moment he began to light the flag, and when Mr. Johnson turned to bear the brunt of the blast, lunged bodily through the safety circle and bore Mr. Johnson forcibly to the ground.

14.     Arms linked, the remaining members of the protest group continued to express their protected message by chanting protest words. But even after Mr. Johnson was unlawfully detained and the flag extinguished, the City's officers swarmed the free speech zone, backing Mr. Fridley and the protest group against a fence at the Convention site.

15.     They did not issue a dispersal order. Instead, they advanced on the protest group, still engaged in protected speech, creating a face-off a few feet from the protesters, who, arms linked in solidarity, continued their protected chant. And the City's officers, including Defendants John Doe 2 and 3, alternated between demands for the impossible ("back up," they said, though the protesters were backed against a wall) and periodically advancing on the group to tear them forcibly apart, bear them to the ground, and arrest them.

16. Defendants John Doe 2 and 3 were among the handful of officers who seized Mr. Fridley with enough force to abrade his arms and cause open wounds, and bore him bodily to the ground as he continued his chant. Engaged in protected activity throughout, Mr. Fridley continued to hold hands with his fellow protesters, but did not offer any resistance when he was dragged beneath the officers, even as his throat was pinned by the leg of another tackled protester, which required another officer present to kick the limb from his throat as he gasped that he was choking.

17. Mr. Fridley was arrested without probable cause, detained, and charged with obstructing official business, aggravated disturbance of the peace, and disobeying a lawful order. The prosecution continued without probable cause until charges were dismissed against all defendants by judicial order docketed October 20, 2018, which granted a defense motion to dismiss all charges under *Texas v. Johnson*, terminating all proceedings in Mr. Fridley's favor.[1]

18. After conducting an evidentiary hearing and viewing ample video evidence, Cleveland Municipal Court Judge Patton, who presided over the City's failed prosecution of all 16 individuals involved in the flag-burning, explained that "[i]t looked like they were doing a peaceful protest," and understood that Mr. Johnson "was doing what he did, and the Supreme Court said he could do it."[2] Judge Patton therefore dismissed all charges against Mr. Fridley and his fellow protesters by order docketed October 20, 2017, making the following findings that Mr. Fridley alleges here:

> The defendants were arrested on July 20, 2016 while engaged in political protests at the intersection of East 4th Street and Prospect Avenue, in the City of Cleveland, County of Cuyahoga, and State of Ohio. The defendants were all charge with; Failure to Comply with a Lawful Order, Aggravated Disorderly Conduct, and/or Obstruction

---

[1] Mr. Fridley's claims are intertwined with those pleaded by Mr. Johnson in a pending civil action, *Johnson v. City of Cleveland et al.*, and Mr. Fridley adopts the factual allegations pleaded by Mr. Johnson's First Amended Complaint, and incorporates and re-alleges them as though fully set forth below.

[2] Matt Pearce, *Protesters who burned the U.S. flag at 2016 Republican convention were wrongly charged, judge says* (Los Angeles Times Oct. 24, 2017), *available at* http://www.latimes.com/nation/la-na-flag-burning-20171024-story.html.

of Official Business. The Republican National Convention (RNC) was being held in Cleveland, Ohio during this time.

In their brief the defendants allege they had gathered peacefully at the intersection of East 4th Street and Prospect Avenue in the City of Cleveland, County of Cuyahoga and State of Ohio. The protesters were surrounded by media and spectators. The protesters began to chat, "One, two, three, four, slavery, genocide and war. Five, six, seven, eight, America was never great." This Court viewed video of these events and saw what appeared to be one of the defendants pulling a flag from underneath his shirt. There were other defendants/protesters who circled around defendant, Gregory Lee Johnson. They locked arms and continued to chant. The video showed some one spraying a fire retardant on Mr. Johnson and the American flag while he was attempting to set the flag on fire.

. . .

From the audio portion of the video it is apparent there were people in attendance during these events who were offended by the protesters songs and Mr. Johnson's actions in attempting to burn the flag.[3]

19. Judge Patton rendered the following conclusions of law.

As in Johnson, the prosecution in the cases, sub judice, seeks to sanction the defendants' conduct under the disorderly conduct laws. If there is a bedrock principle underlying the first amendment, it is that the government may not prohibit the expression of an idea without more that removes the idea from the First Amendment's protection. See, Hustler Magazine, Inc. v. Farwell, 485 U.S., at 55-56; City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, (1984). The U.S. Supreme Court has not recognized an exception to this principle even where the flag has been involved in protest marches.

In the case pending before the Court, the defendants were engaged in the expressive conduct of flag burning. As repugnant as that behavior may be to some, Texas v. Johnson makes it plain that such conduct may not be sanctioned as breaches of the peace. Therefore, the Defendants' Joint Motion to Dismiss is well taken and is therefore granted.

It is therefore ORDERED that all charges against each defendant in the above captioned cases now pending before this Court, must be, and therefore are DISMISSED. [Accordingly] Each defendant is discharged of record. The costs of these matters are ORDERED taxed to Plaintiffs, City of Cleveland/State of Ohio.[4]

---

[3] *City of Cleveland v. Fridley*, 2016-CRB-013744 (Oct. 20, 2017).

[4] *Id.*

## CAUSES OF ACTION (FEDERAL)

### CLAIM 1
### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—MALICIOUS PROSECUTION
### (Against the City and individual defendants in their official and personal capacities)

20. Mr. Fridley incorporates all previous allegations.

21. "[T]he constitutional tort of malicious prosecution . . . is actionable in our circuit as a Fourth Amendment violation under § 1983."[5]

22. Mr. Fridley was criminally prosecuted on sham charges for fully protected expressive activity in a designated free-speech zone, which cannot and did not furnish probable cause.

23. Defendants made, influenced, or participated in the decision to prosecute Mr. Fridley, including by falsifying evidence, drafting and submitting misleading investigative reports and affidavits, and omitting key and material facts. They did so because they were motivated to conceal their politically-motivated censorship of a lawful protest with insinuations of criminality, which Defendant Williams repeated and ratified at press conferences held in the aftermath of the ensuing public outcry.

24. There was no probable cause for the criminal prosecution of Mr. Fridley. He neither obstructed police business, engaged in disorderly conduct, or disobeyed any lawful order. To the contrary, he simply engaged in protected speech, with his back against a security fence and his arms linked with his fellow protesters, until he was forcibly tackled and arrested.

25. Mr. Fridley suffered a deprivation of his liberty and irreparable harm. Even after the initial seizure, he was compelled to attend court hearings and subject to bond restrictions.

26. The prosecution was resolved in his favor when all charges were dismissed against him on October 20, 2017.

---

[5] *King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017).

27. Defendants' conduct violated the Fourth and Fourteenth Amendments.

28. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable. He was physically injured by the Defendants, suffered abrasions and open wounds, and was denied basic treatment while in holding at the Justice Center. The ordeal, including the surveillance, Chief Williams' specific identification of him, and the attenuated, year-long prosecution despite ample video evidence that, as Judge Patton correctly ruled, showed he committed no crime, deprived him of the vocation he found in political organizing, and the repeated court-ordered appearances over the duration of the prosecution interfered with his employment and caused him anxiety and emotional distress.

29. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 2
### MUNICIPAL *MONELL* LIABILITY, 42 U.S.C. § 1983—AUTHORIZED ACTION
### (AGAINST THE CITY OF CLEVELAND)

30. Plaintiff incorporates all previous allegations.

31. The City and its designated policymaker for police practices at the RNC free-speech zone, Defendant Williams, authorized a malicious prosecution to paper over the constitutional violations they wrought. Occuring against a backdrop of repeated instances of indifference to the constitutional rights of protesters who challenge national or civic pride with protected symbolic burnings, and motivated to sweep speech they found inconvenient or disagreeable from designated free-speech zones while Cleveland was on the world stage, the commencement and attenuated

pursuit of sham charges was authorized and intended to create plausible deniability for the unlawful censorship the City effected.[6]

32. Chief Williams was authorized to issue and implement official policy on criminal investigations and prosecutions by the City.

33. No reasonable officer or attorney could believe that the actions Defendants took were lawful or permitted by the Constitution. No reasonable officer or attorney could believe that the City had probable cause to arrest or prosecute Mr. Fridley, and police reports authorized and ratified by Defendant Williams and the City concealed the lawful nature of Mr. Fridley's conduct.

34. The City is liable under the First, Fourth, and Fourteenth Amendments under 42 U.S.C. § 1983.

35. As a direct and proximate result of the City's unlawful activity, Mr. Fridley has suffered and continues to suffer economic and non-economic damages for which the City is liable.

36. The City's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter the City and others from engaging in this type of unlawful conduct.

CAUSE OF ACTION (STATE)

CLAIM 3
MALICIOUS CRIMINAL PROSECUTION

37. Plaintiff incorporates all previous allegations.

38. Defendants maliciously instituted the criminal prosecution of Mr. Fridley, without probable cause, and it was terminated in Mr. Fridley's favor on October 20, 2017.

39. Defendants maliciously continued to prosecute Mr. Fridley in the absence of probable cause until it was terminated.

---

[6] *Canton v. Harris*, 489 U.S. 378, 392 (1989); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 996 n.8 (6th Cir. 1994).

40. Defendants' malicious prosecution of Mr. Fridley caused him irreparable harm.

41. As a direct and proximate result of Defendants' unlawful activity, Mr. Fridley has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

42. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## PRAYER FOR RELIEF

Mr. Fridley thus respectfully requests that the Court:

1. Enter judgment in Mr. Fridley's favor on all claims for relief;

2. Declare that Defendants' acts, omissions, and conduct constitute violations of the Fourth and Fourteenth Amendments to the United States Constitution, as well as of 42 U.S.C. § 1983.

3. Award injunctive relief enjoining Defendants from further unlawful application of Ohio law, and requiring Defendants to conduct adequate and specific training on protecting symbolic speech, including how to protect those who may wish to protest by burning the flag, and how to avoid unlawfully arresting them.

4. Declare that Defendants are liable for damages on all claims for relief;

5. Award full compensatory damages, including but not limited to damages for pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and inconvenience that Mr. Fridley has suffered and is reasonably certain to suffer;

6. Award punitive and exemplary damages for the individual Defendants' intentional, malicious, and egregious acts and callous and reckless disregard of Mr. Fridley's constitutional rights;

7. Award pre- and post-judgment interest at the highest lawful rate;

8. Award Mr. Fridley his reasonable attorneys' fees and all other costs of suit available under 42 U.S.C. § 1988 and Ohio Rev. Code 2921.03(C); and

9. Award all other relief in law or equity, including injunctive relief, to which Mr. Fridley is entitled and that the Court deems equitable, just, or proper.

### JURY DEMAND

Mr. Fridley demands a trial by jury on all issues within this Complaint.

    Respectfully submitted,

    */s/ Patrick Kabat*
    Subodh Chandra (OH Bar No. 0069233)
    Patrick Kabat (NY Bar No. 5280730)
    THE CHANDRA LAW FIRM LLC
    The Chandra Law Building
    1265 W. 6th St., Suite 400
    Cleveland, OH 44113-1326
    216.578.1700 Phone
    216.578.1800 Fax
    Subodh.Chandra@ChandraLaw.com
    Patrick.Kabat@ChandraLaw.com

    *Attorneys for Plaintiff Steven Fridley*